UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 11-cr-357-1 (RMC) |
| | ) | |
| BRIAN W. TALBOTT, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Brian W. Talbott moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  *See* Motion to Vacate [Dkt. 152].  On November 7, 2016, this Court held an evidentiary hearing on Mr. Talbott's motion and heard argument from both parties.  For the reasons set out below, the Court will deny Mr. Talbott's § 2255 motion.

**I.  FACTS**

**A.  Background**

On January 9, 2012, Mr. Talbott pled guilty to Conspiracy to Commit Bank Fraud (Count 1), Conspiracy to Commit Mail Fraud (Count 2), and Conspiracy to Defraud the Government (Count 3) before Judge Robert Wilkins, formerly a district court judge and now a judge of the D.C. Circuit.  *See* Plea Agreement [Dkt. 31].  The underlying fraud involved repeated "sales" of the same house between Mr. Talbott and his partner, each based on falsified releases of the prior bank lien due to a mortgage.  During the plea negotiations and at the plea hearing, Mr. Talbott was represented by Michael P. Resavage of The Phillips Law Offices, LLC, who became counsel of record on December 9, 2011.  Mr. Talbott chose to retain new counsel, Matthew Kaiser and Rebecca LeGrand of KaiserDillon PLLC (formally Kaiser, LeGrand &

1

Dillon), for sentencing.  Mr. Kaiser and Ms. LeGrand represented Mr. Talbott both at sentencing and on appeal.

Before his plea hearing, Mr. Talbott moved to be released on bond, which motion was denied at a status conference on December 20, 2011.  *See* Motion for Bond [Dkt. 20].  Mr. Talbott's plea agreement anticipated Offense Level 22 and Criminal History Category II under the United States Sentencing Guidelines (USSG or Guidelines).  This calculation included a three level downward departure of his offense level for early acceptance of responsibility.  *See* Plea Agreement at 3.  The Guidelines range for Mr. Talbott was 46 to 57 months' incarceration.  *See id*. at 4.  After the plea hearing, Judge Wilkins indicated that he would entertain any further motions for release on bond.  Based on Mr. Talbott's second motion for release because his elderly mother was very ill, on January 24, 2012, the Judge released Mr. Talbott on electronic monitoring and other conditions to live with his parents in Florence, South Carolina, where the local Probation Office had agreed to supervise him.  *See* Tr. 9/5/12 [Dkt. 134] at 51:17-18.  As part of his conditions of release, Mr. Talbott was ordered not to conduct any financial or business transaction without approval or to commit any new criminal offences. *See* Motion to Revoke Conditions of Release [Dkt. 78] (Mot. to Revoke) at 1.

On February 8, 2012, less than a month after being released to South Carolina, Mr. Talbott requested relocation to Delaware in order to attend to his business affairs before sentencing and potential imprisonment.  *See* Motion for Reconsideration [Dkt. 45].  The motion was granted and Mr. Talbott was ordered to report to the U.S. Probation Office in Delaware on February 24, 2012.  Thereafter, in April 2012, Mr. Talbott registered multiple vehicles with the Delaware Division of Motor Vehicles, despite notifying the Pretrial Services Officer that he was only registering one vehicle.  In addition, for at least one of those vehicles, Mr. Talbott attempted

to file a forged lien release document.  *See* Mot. to Revoke at 1-2.  On learning of this failure to comply with release conditions, Judge Wilkins issued a warrant for Mr. Talbott's arrest on June 19, 2012.  *See* Arrest Warrant [Dkt. 86].

On July 2, 2012, at what was scheduled to be a sentencing hearing, Judge Wilkins held a status conference to consider "several adjustments under the sentencing guidelines" after he had reviewed all the pertinent documents, including several victim impact statements.  Tr. 7/2/12 [Dkt. 139] at 6:1-14.  In particular, the Judge explained that he was considering the following upward changes to Mr. Talbott's base offense level under the Guidelines:  (1) two points for obstructing or impeding the administration of justice, pursuant to § 3C1.1 of the Guidelines, because Mr. Talbott failed to disclose certain assets and had threatened at least one victim for revealing his fraudulent activity; (2) two points for abuse of a position of trust or use of a special skill, pursuant to § 3B1.3, because Mr. Talbott was president and CEO of the company engaged in, and at the time of, the fraud and he was a licensed realtor; (3) two points for aggravated role as the leader, pursuant to § 3B1.1, because Mr. Talbott was president of the company and most of its assets were in his name, demonstrating leadership; (4) two points for ten or more victims, pursuant to § 2B1.1(2)(A); and (5) removal of Mr. Talbott's three point adjustment for early acceptance of responsibility based on his behavior while on supervision.  *See id.* at 6:15-10:9; USSG §§ 2B1.1(2)(A), 3B1.1, 3B1.3, 3C1.1, 3E1.1 (Nov. 2011).

In response to Judge Wilkins' suggested adjustments, the government filed a Supplemental Memorandum noting that a stipulation in Mr. Talbott's plea agreement barred adjustments for aggravated role, abuse of position of trust, or ten or more victims, so that the government would not request such adjustments.  *See* Gov't Mot. for Departure [Dkt. 109] at 1-2.  However, the government argued that the denial of Mr. Talbott's three point reduction for

3

early acceptance of responsibility was appropriate. *See id*. at 3-4  In addition, because Mr. Talbott "engaged in conduct that both violated the conditions of his release and constituted new fraudulent criminal activity" the government requested an upward departure to Offense Level 30. *Id*. at 4.  Combined with Mr. Talbott's criminal history, this upward departure would result in a Guidelines range of 108 to 135 months of imprisonment.  The government requested a sentence of 132 months.  *See id*.

Mr. Talbott argued that his misconduct during pre-trial release, while unacceptable, did not negate his acceptance of responsibility. *See* Def. Supp. Sentencing Memorandum [Dkt. 111-2] at 7-9.  He argued that his prior efforts to disclose assets and provide access to his property should continue to justify a downward departure and that his behavior was indicative of his need for mental health treatment because of his struggle "to manage overwhelming anxiety." *Id*. at 8.  In response to the government's motion for an upward departure to offense level 30, Mr. Talbott argued that his behavior during pretrial release could be a basis to remove his three-point downward departure but *not* for an upward departure as "the defendant's acceptance of responsibility can *never* be used as the basis for a departure" and even if it could, Mr. Talbott's behavior was not "so exceptional that it should result in an upward departure."  Reply to Gov't Mot. for Departure [Dkt. 112] at 3-4.

On September 5, 2012, Judge Wilkins sentenced Mr. Talbott to 120 months of incarceration for Counts 1, 2, and 3, all to be served concurrently, followed by sixty months of supervised release for Count 1 and thirty-six months for Counts 2 and 3, all terms running concurrently.  Mr. Talbott's sentence included a special assessment of $300 and restitution in the amount of $2,969,284 jointly and severally with his co-defendant, Chester Ransom.  Judge Wilkins ultimately declined to increase Mr. Talbott's base offense level but also declined to

accept the three-level downward departure for early acceptance of responsibility. *See* Tr. 9/5/12 at 27:17-28:25. Thus, Judge Wilkins' final calculation of Mr. Talbott's Guideline range was Offense Level 25 and Criminal History Category II for a range of 63 to 78 months' imprisonment. *See id*.

During the sentencing hearing, Judge Wilkins expressed his frustration with Mr. Talbott's behavior during his pretrial release. While Mr. Talbott "tried to show some remorse" the Judge was "not really all that convinced." Tr. 9/5/12 at 50:17-19. Judge Wilkins recounted his grandmother scolding him as a child saying, "it seems like you don't think fat meat's greasy," and how "the next thing that was going to happen was she was going to go to her drawer where she kept her strap, and you were going to taste it if you didn't get your act together." *Id*. at 51:2-11. Addressing Mr. Talbott, the Judge stated "somehow I don't think that you think that fat meat's greasy." *Id*. at 51:12-13. Judge Wilkins recalled that he "let [Mr. Talbott] out [on pre-sentence release] against [his] better judgment"; that Mr. Talbott asked to be located in South Carolina to care for his sickly mother; that he was there for only a brief period of time before requesting relocation; and that he proceeded to commit further crimes while in Delaware. *Id*. at 51:14-25. The Judge further concluded that the "nature and circumstances of [Mr. Talbott's] offense are such that a sentence above the guidelines is clearly appropriate." *Id*. at 52:11-13. Mr. Talbott committed fraud repeatedly and he threatened those who might have reported him. *See id*. at 52:14-20. His behavior was "callous and calculating" showing "a lot about [his] character . . . or lack thereof." *Id*. at 52:20-22. Despite a good plea deal, Mr. Talbott "abused the deal that [he] got." *Id*. 53:3-4. For these reasons, the Judge departed upwards from the Guidelines range in his sentencing.

Mr. Talbott filed a timely notice of appeal on September 10, 2012. *See* Notice of Appeal [Dkt. 116].  The United States Court of Appeals for the District of Columbia affirmed Mr. Talbott's plea and sentence on July 1, 2014.  *See United States v. Ransom*, 756 F.3d 770 (D.C. Cir. 2014).  The case was reassigned to Chief Judge Richard Roberts following Judge Wilkins' appointment to the D.C. Circuit.  On April 4, 2015, following Chief Judge Roberts' retirement, the case was reassigned to this Judge.

On October 25, 2015, Mr. Talbott filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel with respect to Mr. Resavage, Ms. LeGrand, and Mr. Kaiser.  *See* Motion to Vacate Sentence [Dkt. 152].  The United States moved for an order recognizing a waiver of attorney-client privilege between Mr. Talbott and his former attorneys with respect to issues raised by Mr. Talbott's ineffective assistance of counsel claims, s*ee* Mot. for Order Finding Waiver of the Attorney-Client Privilege [Dkt. 162], which was granted by this Court on August 17, 2016.  *See* Order on Waiver [Dkt. 172].

### B.  The § 2255 Evidentiary Hearing

On November 7, 2016, this Court held an evidentiary hearing on Mr. Talbott's § 2255 motion.  During the hearing, Mr. Talbott's attorney withdrew all claims concerning Ms. LeGrand and Mr. Kaiser.  *See* Tr. 11/7/16 [Dkt. 176] at 5:15-25.  Only claims related to Mr. Resavage's conduct during plea negotiations and at the plea hearing remain before the Court.  At the hearing, the parties presented four witnesses:  Mr. Resavage, Mr. Kaiser, Ms. LeGrand, and Mr. Talbott.

#### 1.  Mr. Resavage's Testimony

Mr. Resavage testified that he joined The Phillips Law Firm around 2011 where he practiced bankruptcy law and some criminal law.  He became counsel of record in Mr.

Talbott's case on December 9, 2011.  Mr. Talbott's case was the only federal criminal case Mr. Resavage ever handled.  *See id*. at 10:8-21, 26:3-9.  Mr. Resavage testified that he received the plea offer for Mr. Talbott on December 21, 2011 and on the same day underwent shoulder surgery.  *See id*. at 33:17-22.  He was out of the office for his recovery from the day he received the plea until January 5, 2012, during which time he was on pain medication.  *See id*. at 33:25-34:6, 34:22-35:1.  Despite Mr. Resavage's absence from work, he spoke to the government and the Assistant U.S. Attorney contacted the Court on December 28, 2011 to set a hearing date for the plea agreement.  *See id*. at 34:7-11.  Mr. Resavage was "not a 100 percent sure" he had spoken to Mr. Talbott prior to the plea hearing, but believed he had had a telephone conversation with Mr. Talbott in which he explained that there was a plea offer and that Mr. Talbott "could take it" or "[i]f he didn't want to take it, he didn't have to take it."  *Id*. at 34:17-18, 35:6-9.  Mr. Resavage could not recall the loss, i.e. restitution, amount in the plea agreement and did not seem aware of the fact that Mr. Talbott's Guidelines calculation could be affected by the number of victims.  *Id*. at 42:13-17, 46:10-13.

        Mr. Resavage testified that the first time he discussed the plea agreement in detail with Mr. Talbott was for about one hour on the morning of the plea hearing.  *See id*. at 15:13-22.  He was accompanied by his girlfriend, a licensed attorney who played no "role other than to drive [him] there" and "did not converse alone with [Mr. Talbott]."  *Id*. at 16:3-12.  Mr. Resavage testified that he "did not tell [Mr. Talbott] to be untruthful" and that he did "explain to him what was going to occur" at the hearing.  *Id*. at 18:8-13.  Mr. Resavage recalled telling Mr. Talbott "if he was truly not guilty, then [he could not] take the plea agreement."  *Id*. at 19:12-16.  Following the plea hearing, Mr. Talbott became unhappy with Mr. Resavage's representation

7

and asked to withdraw his guilty plea.  When Mr. Resavage refused, finding no basis to withdraw the plea, Mr. Talbott retained new counsel.  *See id*. at 24:3-17.

On cross-examination, counsel for Mr. Talbott highlighted several typographical errors in Mr. Resavage's filings in court.  *Id*. at 28:11-19, 29:10-25.  When asked whether he would believe there were errors in other filings, Mr. Resavage responded "Oh, absolutely." *Id*. at 30:1-3.  Mr. Resavage was unable to answer questions related to the Guidelines and acknowledged that he did not determine whether Mr. Talbott was entitled to any credits under the Guidelines before advising him to plead guilty.  *See id*. at 32:14-33:14.

### 2.  Mr. Kaiser and Ms. LeGrand's Testimony

Mr. Kaiser testified that he began his own law firm, KaiserDillon, about seven and a half years ago and primarily practices white collar criminal law.  *See id*. at 53:5, 54:3-4. Mr. Kaiser testified that he represented Mr. Talbott beginning in April 2012 and that Mr. Talbott expressed dissatisfaction with his prior representation and wanted advice on whether to withdraw his guilty plea.  *See id*. at 57:8-15, 58:16.  Through conversations with Mr. Talbott, Mr. Kaiser learned that "Mr. Resavage just didn't spend a lot of time with Mr. Talbott talking to him about the plea agreement, talking to him about what it meant. Talking to him about his option to go to trial.  What the evidence against him would be, what the guidelines calculations and the plea agreement were."  *Id*. at 57:24-58:4.  In general, Mr. Kaiser was under the impression that there "were just wide [swaths] of information in conversation about the plea agreement, about just the federal criminal process that Mr. Resavage . . . hadn't talked to Mr. Talbott about and that he didn't seem to understand."  *Id*. at 58:5-9.

Ms. LeGrand, an attorney at KaiserDillon, was the primary attorney representing Mr. Talbott at sentencing and on appeal because "she and Mr. Talbott . . . established a rapport."

*Id*. at 61:17-25. Ms. LeGrand, like Mr. Kaiser, testified that Mr. Talbott did not seem to have "had a chance to go through [his plea agreement] with a lawyer in any detail before talking to" the attorneys at KaiserDillon. *Id*. at 89:10-11.

Mr. Kaiser and Ms. LeGrand testified that they identified two concerns with Mr. Talbott's plea agreement. First, there was a discrepancy between Mr. Talbott's plea agreement, which estimated Offense Level 22, and the Presentence Investigation Report (PSR), which calculated Level 26. *See id*. at 60:16-24. The PSR also challenged the number of victims as stipulated to in the plea agreement, noting that there were, in fact, 54 victims of the fraud who suffered a loss. *See* PSR [Dkt 71] at 29. This discrepancy, according to Mr. Kaiser was a "red flag that the guidelines stipulation [was] wrong and . . . [would] cause problems for Mr. Talbott." *Id*. at 60:22-24. Second, there were problems with the calculation of the loss amount in Counts I and II. *See id*. at 67:3-6. In particular, for Count I "the guideline calculations didn't take into account the fact that the house at issue still existed and would go to the bank. So the real loss, if any, that would be suffered by the purported victims in Count I was much lower than what was discussed in the statement of offense." *Id*. at 93:8-13. For Count II, Ms. LeGrand was concerned by the fact that she was unable to identify how the numbers were calculated for the plea agreement. *See id*. at 103:24-104:3.

Ultimately, Mr. Kaiser and Ms. LeGrand recommended that Mr. Talbott not withdraw his guilty plea because "the penalties for withdrawing the plea under the standard U.S. Attorney[']s office plea agreement are so significant, it really doesn't make sense to do." *Id*. at 63:4-6. Mr. Talbott agreed with that recommendation. *See id*. at 68:6-8. Instead, to rectify the concern regarding the number of victims, Mr. Kaiser and Ms. LeGrand negotiated a stipulation with the government to ensure there would be no victim enhancement in Mr. Talbott's

sentencing calculation. *See id*. at 66:4-12. Ms. LeGrand testified that she attempted to negotiate with the government to correct the loss amount for Count I but was unable to change the plea agreement. *See id*. at 93:21-25, 94:1-8.

### 3. Mr. Talbott's Testimony

Mr. Talbott testified that on the morning of his plea hearing, "he didn't even know it was a plea hearing" and that Mr. Resavage arrived about an hour late for the hearing. *Id*. at 119:10-14. Mr. Talbott further testified that a woman he did not recognize came to the holding cell in the courthouse and gave him a copy of the plea agreement. *See id*. at 119:15-23. A few minutes later, Mr. Resavage arrived and they only had about "three or four minutes" during which time Mr. Talbott expressed concern with parts of the plea agreement and the potential sentence. *Id*. at 119:24-120:11. Mr. Talbott testified that Mr. Resavage told him to "follow my lead" and to "answer affirmative" to all of the Judge's questions in order to "get you home today." *Id*. at 120:12-15. Mr. Talbott, whose primary goal was to get out of jail, took Mr. Resavage's advice. *See id*. at 120:14-22. Mr. Talbott later reviewed his plea agreement with his father, a former prosecutor, and became aware of its full consequences, in particular its restitution amount. *See id*. at 122:11-15. Mr. Talbott decided to retain new counsel.

## II. Legal Standard

### A. Motion to Vacate Sentence

Under 28 U.S.C. § 2255, a prisoner sentenced in federal court may move to vacate, set aside, or correct his sentence on the basis that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To gain relief

under § 2255, the defendant must show "a good deal more than would be sufficient on a direct appeal from his sentence." *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992). The defendant must demonstrate, by a preponderance of the evidence, *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973), that "the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001), *cert. denied*, 535 U.S. 955 (2002). Typically a prisoner is entitled to an evidentiary hearing to meet his burden unless "the motion and files and records of the case conclusively show the prisoner is entitled to no relief." *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996).

### B. Ineffective Assistance of Counsel

To prevail on a § 2255 claim alleging ineffective assistance of counsel, a defendant must establish (1) that his counsel's performance was deficient, *i.e.*, that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that counsel's "deficient performance prejudiced the defense" meaning "counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether a lawyer's performance was deficient depends on persuasive evidence that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Hughes*, 514 F.3d 15, 18 (D.C. Cir. 2008) (quoting *Strickland*, 466 U.S. at 687-88); *see also Nix v. Whiteside,* 475 U.S. 157, 165 (1986); *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005); *United States v. Mendez-Cruz,* 329 F.3d 885, 890-91 (D.C. Cir. 2003); *United States*

*v. Catlett*, 97 F.3d 565, 570 (D.C. Cir. 1996); *United States v. Bruce*, 89 F.3d 886, 893 (D.C. Cir. 1996).

### III. Analysis

Mr. Talbott argues that his counsel's performance during his plea negotiations and plea hearing was deficient and that, as a result, his plea agreement included an incorrect loss assessment which, in turn, affected his offense level calculation under the Guidelines.[1] *See* Tr. 11/7/16 at 160:15-19. Mr. Talbott argues that he was prejudiced because Judge Wilkins was presented with an incorrect Guidelines calculation in considering his sentence. In addition, because of the incorrect Guidelines calculation, Mr. Talbott argues that his plea was invalid. He therefore requests that his plea agreement be declared invalid, that further discovery be conducted to determine the correct Guidelines level, and that a resentencing hearing be held based on a corrected plea agreement. *See id*. at 161:4-17.

The government argues that Mr. Talbott fails to prove prejudice, as required by *Strickland* because: (1) Mr. Kaiser and Ms. LeGrand mitigated aspects of Mr. Resavage's performance; (2) Judge Wilkins departed from the Guidelines and a slight change in the Guidelines estimate would not have altered the outcome; and (3) there was no evidence to suggest that Mr. Talbott would not have pled guilty, thereby leading to a different outcome. *See id*. at 164:11-15, 166:4-167:21. The Court agrees Mr. Talbott has failed to show sufficient prejudice as a result of the alleged deficiencies. Thus, despite serious concerns with Mr.

---

[1] Additional arguments advanced in Mr. Talbott's pro se § 2255 Motion [Dkt. 152] were abandoned during the evidentiary hearing. Further, during the evidentiary hearing, counsel for Mr. Talbott agreed that any prejudice that might have resulted from an enhancement for number of victims was rectified through the stipulation negotiated by Ms. LeGrand and the AUSA. *See* Tr. 11/7/16 at 154:12-15.

Resavage's performance, this Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697.

Mr. Talbott's argument centers on whether the loss calculation in his plea agreement was incorrect and improperly impacted his Guidelines calculation. The Supreme Court recently held that "in the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder." *Molinda-Martinez v. United States*, 136 S.Ct. 1338, 1347 (2016). Mr. Talbott has failed to demonstrate that there was, in fact, a mistake in the loss amount or that any error would have affected his Guidelines calculation. For Count I, Mr. Talbott argues that the loss assessment failed to take into consideration the value of the house, which he estimated at $2.2 million. *See* Tr. 11/7/16 at 132:22-25. He further estimated approximately $1.6 million in liens against the property, leaving some equity to be paid to lenders, which would reduce the ultimate loss calculation. *See id*. However, Mr. Talbott produced no evidence of the value of the house and liens to support his testimony. Ms. LeGrand, who testified that she investigated the loss amount extensively, was unable to tell the Court whether the liens exceeded the value of the home in 2012. *See id*. at 98:24-100:12. For Count II, Mr. Talbott presented no evidence to show how the loss calculation was erroneous. Furthermore, only a large reduction in the loss calculation for either Count I or II could have led to a reduction in the sentencing calculation. Mr. Talbott was required to show a difference significant enough to have had an actual impact on his offense level. His burden to show prejudice is to demonstrate a "reasonable probability" that but for an incorrect loss calculation, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. It "is clear enough that a defendant must make more than the bare allegation" that the outcome would have been different. *United States v. Horne*, 987 F.2d 833,

836 (D.C. Cir. 1993); *accord United States v. Tolson*, 372 F. Supp. 2d 1, 18-19 (D.D.C. 2005). Mr. Talbott has not met that burden.

Even if Mr. Talbott could demonstrate that his Guidelines calculation was incorrect, he fails to demonstrate a "reasonable probability" that but for the incorrect calculation, the outcome of his sentencing hearing would have been different. In *Molina-Martinez*, the Supreme Court held that "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probably of prejudice does not exist." *Molina-Martinez*, 136 S.Ct. at 1346. For example, if "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range . . . [and] the judge based the sentence he or she selected on factors independent of the Guidelines." *Id*. at 1346-47. Judge Wilkins found an Offense Level 25 and Criminal History Category II, which resulted in a Guidelines range of 63 to 78 months' imprisonment. Nonetheless, Judge Wilkins sentenced Mr. Talbott to 120 months. It is clear that Judge Wilkins reviewed all relevant materials before him including multiple victim impact statements, letters from Mr. Talbott's parents, Mr. Talbott's plea agreement, and the PSR. He also considered Mr. Talbott's violation of his conditions of release, which included filing fraudulent documents with the State of Delaware. Judge Wilkins applied the factors from 18 U.S.C. § 3553(a) and decided, in his judgment, that Mr. Talbott should be sentenced above the applicable Guidelines range. Trial judges are not bound by the Guidelines, which "are no longer mandatory and provide recommendations based on national experience only." *United States v. Williamson*, 83 F. Supp. 3d 394, 401 (D.D.C. 2015). In addition to the Guidelines, "[c]ourts must . . . fully consider the factors identified in 18 U.S.C. § 3553(a)." *Id*. Judge Wilkins did so. In explaining his reasoning, he discussed "the nature and circumstances of the offence and the history and characteristics of [Mr. Talbott]," the need to "promote respect for the law," to "afford

adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C); Tr. 9/5/12 at 50:6-53:17. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." *Strickland*, 466 U.S. at 693. The defendant must show "[a] reasonable probability" which "is a probability sufficient to undermine confidence in the outcome" of the proceedings. Given Judge Wilkins' decision to depart significantly from the Guidelines range based on his assessment of the § 3553 factors, it is not "reasonably probable" that but for a change in Mr. Talbott's restitution amount, with some unknown possible impact on the Guidelines' calculation of his sentencing range, the outcome of the case would have been different.

### IV.   Conclusion

For the foregoing reasons, the Court denies Brian W. Talbott's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 [Dkt. 152].

Date:  February 10, 2017                          /s/
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge